IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNY L. BUCKNER,

       **Plaintiff,**

vs.                                                                                                                           **No.  03cv0624 DJS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Buckner's) Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision **[Doc. No. 6]**, filed September 29, 2003, and fully briefed on December 3, 2003.  On November 20, 2002, the Commissioner of Social Security issued a final decision denying Buckner's claim for disability insurance benefits and supplemental security income benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to reverse and remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Buckner, now twenty-nine years old, filed her application for disability insurance benefits and supplemental security income benefits on June 4, 2001, alleging disability since May 1, 2001, due to hepatitis C, fatigue, fever, diarrhea and pain in her abdomen and legs.  Tr. 86. Buckner has a general equivalency diploma and past relevant work as a clerk cashier, office attendant, laborer, and restaurant manager.  Tr. 15.  On November 20, 2002, the ALJ denied benefits, finding her

hepatitis C and mixed adjustment disorder constituted severe impairments but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Tr. 16. At step four of the sequential evaluation process, the ALJ found Buckner was not disabled because she could perform her past relevant work as a clerk/cashier, office attendant, and laborer. Tr. 18. As to her credibility, the ALJ found Buckner's testimony was simply not credible. Tr. 17. Buckner filed a Request for Review of the decision by the Appeals Council. On March 26, 2003, the Appeals Council denied Buckner's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Buckner seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III. Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

3

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Buckner makes the following arguments: (1) the ALJ erred in his evaluation of her medical and mental impairments; (2) the ALJ erred in his credibility determination; (3) the ALJ's hypothetical question to the vocational expert (VE) was defective; and (4) the ALJ's residual functional capacity (RFC) determination is contrary to the evidence and the law.

### A.  Evaluation of Medical and Mental  Impairments

Buckner contends the ALJ's finding that her medical impairments were not disabling is not supported by substantial evidence.  Specifically, Buckner contends the ALJ did not give the proper weight to her treating physicians' opinions.  Pl.'s Mem. in Supp. of Mot. to Reverse at 2. Buckner claims her medical records are "replete with incidents of visits to the doctor for fainting, anxiety and depression and Hepatitis C."  *Id.* at 3.  Additionally, Buckner claims "[e]ven a desk job is physically exhausting to a person with Hepatitis C."  *Id.*  Finally, Buckner claims the ALJ erroneously relied on the DDS nonexamining consultant's RFC.

Generally, the ALJ must "give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  "Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors  provided in [§] 404.1527.'"  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting Social Security Ruling 96-2p, 1996 WL 374188, at *4).  A treating physician's opinion is considered in relation to factors such as its consistency with

4

other evidence, the length and nature of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence. 20 C.F.R. § 404.1527(d) (1)-(6). If the physician's opinion is "brief, conclusory and unsupported by medical evidence," that opinion may be rejected. *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). Moreover, a treating physician's opinion that a claimant is totally disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

The Court has meticulously reviewed the record and finds that substantial evidence supports the ALJ's finding that Buckner's medical impairments, alone or in combination, were not disabling. Significantly, none of Buckner's treating physicians opined she was disabled or placed any restrictions on her activities. Although, Buckner reported to her psychologist that "because of her diagnosis of Hepatitis C, her doctors have told [her] she should not work," the record does not support this statement. Tr. 143. The ALJ noted Buckner tested positive for Hepatitis C in May 2001 but was not under treatment for this condition. Tr. 16. The record supports this finding. The record also reflects the following:

On June 27, 2001, a psychologist with Counseling Associates, Inc. in Roswell evaluated Buckner. Tr. 147-155. The psychologist noted Buckner had "self-referred for help with anxiety, depression, mental confusion, marital problems, and abuse." Tr. 147. Buckner reported agitation, restlessness, fatigue, poor concentration, irritability, muscle tension, sleep disturbance, diminished interest, appetite loss, fatigue, low self-esteem, inappropriate guilt, indecisiveness, and hopelessness. *Id.* The psychologist diagnosed her with Adjustment Disorder with Mixed Anxiety

and Depressed Mood. Tr. 148. The psychologist also assigned Buckner a GAF score of 48.[1] A GAF score of 48 indicates a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000). However, the psychologist did not include any explanation for giving Buckner this rating and did not indicate that she was unable to work. Standing alone, without any further explanation, this rating does not support an impairment seriously interfering with her ability to work. *Zachary v. Barnhart*, 94 Fed.Appx. 817, 819 (10th Cir. April 14, 2004)(GAF score of 45 standing alone did not support an impairment seriously interfering with an ability to work); *Camp v. Barnhart*, No. 03-7132, 2004 WL 1465777, at *3 (10th Cir. June 30, 2004)(GAF score of 50 without evidence it impaired claimant's ability to work does not establish an impairment).

On August 1, 2001, Dr. Julie Farrer, a gastroenterologist, evaluated Buckner. Dr. Farrer noted, "[s]he only complains of anxiety disorder, some <u>mild</u> occasional myalgias, fatigue, and arthralgias." Tr. 190 (emphasis added). On that day, Buckner denied using alcohol. *Id.* Significantly, Dr. Farrer noted, "the history of anxiety disorder is mildly alarming as Interferon can often times affect a patient's psychiatric well-being. In speaking with the patient, it sounds like the anxiety disorder is <u>mild</u> and is <u>under control</u>." Tr. 191(emphasis added). Buckner also reported having intermittent diarrhea for several weeks. Tr. 192. Buckner had reported having

---

[1] Global Assessment of Functioning (GAF score) is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000) (DSM-IV-TR). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). DSM-IV-TR at 34.

diarrhea for five days on July 31, 2000, but Dr. Shehzad Jinnah attributed this to a bout of gastroenteritis which had resolved.  Tr. 227.

On September 20, 2001, Buckner reported feeling dizzy.  Tr. 202.  Buckner reported she had not lost consciousness.  The attending physician diagnosed her as having experienced dizziness "probably vasovagal."  *Id.*  The physician prescribed Antivert 25 mg as needed.  On October 23, 2001, Buckner returned for a follow-up.  Buckner reported she was no longer dizzy.  Tr. 199.

On September 21, 2001, Dr. Gabaldon, a psychologist and nonexamining agency consultant, completed a Psychiatric Review Technique (PRT) form and a Residual Functional Capacity Assessment (Mental) form.  Tr. 170-185.  Dr. Gabaldon assessed Buckner for Affective Disorders and Anxiety-Related Disorders from May 2001 to the date of the assessment.  Under Affective Disorders, Dr. Gabaldon assessed Buckner for an Adjustment Disorder.  Tr. 172.

In the PRT form, Dr. Gabaldon opined Buckner was mildly limited in activities of daily living, moderately limited in the area of social functioning, mildly limited in the area of concentration, persistence or pace, and had no episodes of decompensation.  The Mental RFC indicated Buckner was moderately limited in the following areas: (1) the ability to work in coordination with or proximity to others without being distracted by them; (2) the ability to ask simple questions or request assistance; (3) the ability to accept instructions and respond appropriately to criticism from supervisors; (4) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (5) the ability to respond appropriately to changes in the work setting; (6) the ability to be aware of normal hazards and take appropriate

precautions; and (7) the ability to set realistic goals or make plan independently of others.  Dr. Gabaldon included a narrative, noting:

> Ms. Buckner alleges to be impaired due to physical problems.  During the course of her evaluation, it became necessary to review her mental status.  She admits to a history of sexual abuse.  There is no evidence of current substance abuse or psychiatric hospitalization.  She admits to being in an abusive relationship and being confused over ending [it].  There is no evidence of ongoing thought disorder or of severe cognitive deficit.  Her daily activities are intact, she does admit to some social difficulties.  Ms. Buckner appears to have the capacity to understand/remember.  She may have some limited capacity to attend/concentrate, to socialize and to adapt.

Tr. 185.

On October 31, 2001, Dr. Jehed Barakat, a gastroenterologist with University Hospital, evaluated Buckner.  Buckner reported having "no symptoms of nausea, vomiting, or diarrhea at the current time."  Tr. 188.  Buckner also did not complain of fatigue on that day.  Additionally, the physical examination was unremarkable.  Specifically, Dr. Barakat noted the abdomen was soft and benign with mild tenderness in the suprapubic area but with no distention.  *Id.*  Bowel sounds were normal.  *Id.*  Buckner reported she continued to smoke marijuana.  Dr. Barakat noted, "Before we consider treatment for chronic hepatitis C with Interferon and Ribavirin, we would like the patient to be abstinent from any drugs or alcohol for at least six months."  Tr. 189.  There is no evidence in the record indicating Buckner ever received this treatment.

On that day, Dr. Barakat also referred Buckner to psychiatry for evaluation of her anxiety and depression.  Buckner reported to Dr. Barakat that "she has a history of anxiety for which she is not on any medications at the current time" and also that "she had mild symptoms of depression" but not on any medication.  Tr. 188 (emphasis added).

On December 3, 2001, Buckner went to The University of New Mexico Health Sciences Center. Tr. 229-233. Buckner reported having depression and anxiety. The clinician completed a "Behavorial Health Comprehensive Assessment Tool" form and found Buckner alert and oriented in all spheres, maintained good eye contact, her speech was fast but had a normal tone, was coherent and had flight of ideas, her affect was expansive, her insight was limited, and her judgment was adequate. Tr. 231. The clinician assigned Buckner a GAF score of 50 and diagnosed her with Anxiety, NOS and Borderline traits. The clinician attached a statement to the report stating, "tangential flight of ideas, + affect, did not appear depressed. Axis II evident: anger, lack of boundaries, histrionic, unhappy with both medical and psychiatric [treatment]." Tr. 233. The clinician also noted, "Cooperative, motivated for [treatment], but very entitled, probably burnt out other resources in Roswell." *Id.*

On March 20, 2002, Raiman K. Johnson, Ph.D, a psychologist, evaluated Buckner at the agency's request. Tr. 252-254. Dr. Johnson's evaluation found, in part, as follows:

> It was my clinical observation Ms. Buckner was oriented to person, place and time, while her mood was agitated and angered, and affect defiant. According to her this was due to her perception past evaluation related to her current illness had not been properly handled and she felt she had not been properly assessed. Specifically she stated: "They were rude and hateful. They said I was too smart and too young to have a disease." Please note this self-report was confirmed by information from Counseling Associates provided for my review at the time of the evaluation. Further observation suggested Ms. Buckner was of average intelligence, willing to self-disclose in great detail concerning her current physical difficulties and was also reporting symptoms suggestive of an Adjustment Disorder, confirmed in the report from Counseling Associates.
>
> It was also my opinion Ms. Buckner demonstrated adequate psychological sophistication, while her socialization skills were acceptable. I further noted Ms. Buckner did not demonstrate any symptoms suggestive of an overt psychoses or neuroses, while she denied having experienced delusions, illusions, hallucinations or perceptual disturbances in the past. It was also my observation her thought processes were intact and she did not evidence any loosening of associations.

> Additionally it appeared Ms. Buckner's fund of information was adequate, while her executive functions were intact. According to her she does experience some short-term memory deficits, but denied experiencing any long-term memory difficulties. In addition there was no evidence she was experiencing any significant cognitive deficits. Specifically I noted Ms. Buckner reported; "It's been a while, my Mom's the one who noticed I was forgetting things. The doctors said it's not because of my current condition." The veracity of this assertion could not be determined.
>
> It was also my opinion Ms. Buckner's judgment and insight were within normal limits. She was capable of understanding abstract concepts and demonstrated an ability to engage in deductive reasoning.
>
> \* \* \* \* \* \* \* \* \* \*
>
> Based upon results of the MSE and information provided for my review at the time of the evaluation, it appears Ms. Buckner is an individual who continues to experience difficulties related to her current circumstance. It also appears clarification concerning her medical condition should be undertaken to ascertain if she should be considered for SSI benefit payments.

Tr. 250-251. Dr. Johnson diagnosed Buckner as having Adjustment Disorder with Mixed Anxiety and Depressed Mood and assigned her a GAF score of 50. A GAF score of 50 indicates a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000). However, Dr. Johnson also did not include any explanation for giving Buckner this rating and did not indicate that she was unable to work. As already noted, standing alone, without any further explanation, this rating does not support an impairment seriously interfering with her ability to work. *Zachary,* 94 Fed.Appx. at 819.

In his decision, the ALJ set forth the evidence and found Buckner not disabled. The Court has reviewed the record and finds that the ALJ properly considered all the medical evidence, including evidence of Buckner's hepatitis C, dizziness, fatigue, arthritic symptoms, anxiety, and depression and determined that none of Buckner's impairments, alone or in combination with other impairments, were disabling within the meaning of Social Security regulations. Substantial evidence supports this finding.

**B.  Credibility Determination**

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

In his decision, the ALJ summarized Buckner's medical records and noted:

> Ms. Buckner's testimony is simply not credible. Her physical examination reports have not shown any results which would reasonably be seen to impose subjective complaints or functional limitations of the type and severity she asserts. She has experienced some transitory illnesses but is generally described as appearing well or not in any apparent distress. There is no indication in the medical record that she experiences chronic health problems related to Hepatitis. Ms. Buckner's mental problems are seen to originate from situational domestic factors rather than a chronic mental illness. She has experienced ongoing turmoil with her boyfriend who is unemployed and has a history of I.V. drug use and abusive behavior. Ms. Buckner's substance abuse and legal issues may be contributory as well. Her testimony that she last used drugs in high school does not comport with what she told her gastroenterologist in October 2001.

Tr. 17. As required by Tenth Circuit law, the ALJ affirmatively linked his credibility findings to substantial evidence. The Court will not upset an ALJ's credibility determination where, as here, it is supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

**D.  Hypothetical Question Presented to Vocational Expert (VE)**

Hypothetical questions need not take into account all of a claimant's alleged impairments. Questions to VE are proper when they take into account the impairments substantiated by the medical reports and the impairments accepted as true by the ALJ. *See Gay v. Sullivan,* 986 F.2d 1336, 1340-41 (10th Cir. 1993); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).

Buckner contends the ALJ's hypothetical question to the VE was defective because he failed to include her lack of energy due to her hepatitis C and her problem with "puking up to half the work-time." Pl.'s Mem. in Supp. of Mot. to Reverse at 9.  When Buckner's counsel added these factors to the ALJ's hypothetical question, the VE opined all work would be precluded. However, the ALJ properly rejected the VE's opinion that Buckner would be precluded from all work because he did not find Buckner credible and the medical record did not support disabling fatigue or a serious problem with daily vomiting.

## D.  Residual Functional Capacity Determination

Residual functional capacity (RFC) is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).  In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion.  See SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  *Id.*  The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved."  *Id.*  "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."  *Id.*

Buckner contends the ALJ's RFC finding that she could return to her past relevant work as a clerk cashier, office attendant, laborer, and waitress is not supported by substantial evidence

12

and is contrary to law. In support of her contention, Buckner argues that she cannot work with the public due to hepatitis C, anxiety and depression. As previously noted, none of Buckner's treating physicians placed any restrictions on Buckner's activities or opined she could not work. Moreover, the VE opined Buckner could perform her past relevant work as a clerk/cashier, office attendant, and laborer. The ALJ consulted with a VE and posed the following questions:

ALJ:   Mr. Johnson, the existence of Hepatitis C diagnosis, what does that do to say, availability of work, in terms of what categories– are there certain categories that are going to be very difficult or impossible for a person to work in, such as food service, et cetera?

VE:   Well, it obviously would affect that. If she was to go in and tell an employer that she has Hepatitis C, [it] would certainly limit her ability to work with areas like food service–

ALJ:   Okay.

VE:   – and I don't think it would hurt– well, it might hurt in other areas, just because of prejudice, but I think the main area would be food service.

ALJ:   All right. And, now, setting aside the issue of prejudice of certain diseases, Hepatitis C, HIV being two of them, but there's unfortunate prejudice out there [inaudible], but just in terms of the health issues and related factors performing certain types of work, would the fact that a person diagnosed with Hepatitis C– would that affect the clerk/cashier– type positions?

VE:   No, Your Honor. I believe not. It would be an area where she was talking about the energy level it would be [inaudible] an eight-hour day.

* * * * * * * * * *

ALJ:   Okay. What I am trying to find out, I mean, food service is real gun shy with anyone with Hepatitis C and HIV, so that pretty much excludes that type of work. I'm just trying to see if the diagnosis – the fact of the diagnosis has impact on other types of work, particularly some jobs that might [inaudible].

VE:   Okay.

ALJ:   Now, past work, you've analyzed [inaudible] that the claimant has held in the past. Would any of those jobs be, in fact, ruled out because of the diagnosis of Hepatitis C?

VE:   Do you mean, Your Honor, if I don't consider the energy level–

ALJ:   Yes.

VE:   – and that sort of thing, just the fact–

ALJ:   Just the fact that she has that label attached to her because that's what her diagnosis is.

VE:   Yes. Right. The only position– she worked in a restaurant as a restaurant manger for a while–

ALJ:   [inaudible]

VE:   – I understand.

VE:   I think that would be the only position directly affected by it. She was also a sales clerk and a cashier and a general clerk, office attendant. Quite a few jobs you've held, and worked as an activities assistant at a nursing home. So, I don't believe it would hurt any of those positions except the restaurant manager.

Therefore, the ALJ considered Buckner's diagnosis of Hepatitis C and its impact upon her ability to return to her past employment. The ALJ also considered Buckner's claims that her mental impairments precluded all work. The ALJ noted:

14

> When Ms. Buckner's condition is evaluated under sections 12.04 and 12.06 of the regulations, I find no more than 'mild' limitations in her activities of daily living or ability to sustain concentration, persistence, and pace. There is no evidence of an ongoing thought disorder or severe cognitive deficit. She retains the ability to understand and remember and her ability to accomplish daily activities is intact. The evidence suggests that Ms. Buckner may have some problems dealing with others. She tends to remain in abusive situations which creates obstacles in maintaining friendships and family relationships. However, no more than 'moderate' limitations are evidenced in this functional area and her ability to deal with co-workers and the public is seen to be limited but satisfactory. No repeated episodes of decompensation are documented, or are any section 12.04 and 12.06 'C' criteria fulfilled.
>
> Ms. Buckner has no exertional limitations. Her hepatitis excludes her from certain occupations with transmission risks. Mentally, Ms. Buckner may be predicted to have a limited but generally satisfactory ability to deal with the public and co-workers.

Tr. 17-18. It is apparent the ALJ considered and adopted Dr. Gabaldon's September 21, 2001 PRT and Mental RFC findings. The ALJ also considered Dr. Raiman Johnson's psychological evaluation. Tr. 17.

Next, Buckner claims the ALJ failed to address her anxiety and depression and cites to her June 26, 2001 visit to Accurate Assessments. That report states, "<u>According to Ms. Buckner</u>, she has experienced the following psychological problems during the past 30 days: serious depression, serious anxiety or tension, and trouble understanding, concentrating or remembering. Tr. 167(emphasis added). The ALJ, however, found that although Buckner was limited by her depression and anxiety she was not limited to the degree she alleged and not to the degree that would preclude all work. Buckner also cites to her GAF score of 48 and the August 27, 2001 visit to Dr. Firoze. However, a GAF score of 48 is not per se indicative of total disability. And, although Dr. Firoze noted Buckner had Hepatitis C, gastroesophageal reflux disease, a history of multiple urinary infections and anxiety disorder, he did not opine she was disabled. Tr. 190. In fact, Dr. Firoze noted, "She currently only complains of anxiety disorder, some mild occasional

15

myalgias, fatigue, and arthralgias.  She denied any current alcohol use, and has otherwise been doing well."  Tr. 190.  Finally, Buckner cites to the September 20, 2001 visit to La Casa de Buena Salud.  Tr. 202.  Buckner complained of dizziness on that day.  However, by October 23, 2001, when Buckner returned for her follow-up, she reported she no longer suffered from dizziness; the attending physician noted, "near syncope/dizziness– controlled."  Tr. 199. Accordingly, the Court finds the ALJ's RFC assessment is supported by substantial evidence.

**Conclusion**

Based on the record as a whole, the Court finds that the ALJ's RFC determination, his finding that Buckner was not wholly credible, and his finding that Buckner was not disabled are supported by substantial evidence.  Therefore, the ALJ's decision adheres to applicable legal standards and is supported by substantial evidence.  Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**